IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

HJALMAR RODRIGUEZ JR,  :
:
              **Plaintiff,**  :
:
v.  :    No. 5:17-cv-10-MTT-CHW
:
Commissioner HOMER BRYSON, *et al.*,  :
:
              **Defendants.**  :
:

## ORDER

Before the Court is a motion for temporary restraining order or preliminary injunction filed by Plaintiff Hjalmar Rodriguez Jr. (Doc. 140). Because Plaintiff has not satisfied his burden of showing that the extraordinary remedy of preliminary injunctive relief is appropriate, Plaintiff's motion is **DENIED**.

## I. BACKGROUND

Plaintiff is a Muslim prisoner housed within the Georgia Diagnostic and Classification Prison's Special Management Unit, a facility reserved for "inmates with a history of disciplinary problems and who are deemed security or escape risks." *Turner v. Warden, GDCP*, 650 F. App'x 695, 697 (11th Cir. 2016). Plaintiff's motion for preliminary injunctive relief relates, at least in part, to the Muslim holy month of Ramadan, which will end on June 14, 2018. Decl. of Samantha Minardo, Doc. 141-1, ¶ 4. Given this impending deadline, which may render moot some of Plaintiff's injunctive requests, and based also on Plaintiff's own request for "exp[e]dited consideration," (Doc. 140, p. 1), the Court enters this ruling without the benefit of a reply brief.

-1-

Plaintiff's motion for preliminary injunctive relief relates to (1) Ramadan fasting during "daylight hours rang[ing] from 5:30 a.m. to 8:45 p.m.," (Doc. 140-1, p. 3), and (2) a general Islamic requirement that Plaintiff conduct "mandatory full body cleansing . . . ever[y] twenty-four (24) hours." Doc. 140-1, p. 1. Plaintiff describes two problems related to Ramadan fasting. First, Plaintiff alleges he is "completely denied the nutritional calorie counts of the midday meal" while fasting. Doc. 140-1, p. 2. More precisely, Plaintiff appears to allege that he is provided with only two-thirds of the standard 2,800 calorie-per-day prison diet, or around 1,867 calories, during Ramadan. (Doc. 140-1, p. 7) ("3[3].33% calories lost").

Second, Plaintiff alleges that his evening meals, typically beans and rice, "more often than not . . . contain foreign objects." (Doc. 140-1, p. 3). These foreign objects—"rocks, sticks, bugs and dirt," (Doc. 140-1, p. 1)—are unintentionally harvested along with "beans and other vegetables [grown] by inmates at Rogers State Prison." Doc. 39-1, p. 10. Plaintiff claims these foreign objects pose a health risk, and Plaintiff is currently litigating an Eighth Amendment claim based on allegations that he previously "bit down on a rock," injured his tooth, and received inadequate medical attention in response. *See* Doc. 39-1, pp. 16–22. Plaintiff also asserts that the foreign objects in his evening meals further detract from the "availability [of] adequate nutrition." Doc. 140-1, p. 3.

In addition to these fasting problems, Plaintiff alleges that he is denied "the simple opportunity to shower once a day," (Doc. 140-1, p. 12), and is therefore unable to perform "Ghusal" or "Ghulsal," the required "bathing [of] the [w]hole body … each body part [ceremonial cleaned] three (3) times, [once] every twenty-four (24) hours[.]"

Doc. 39-1, p. 14; Doc. 140-1, p. 2.  Without the cleanliness derived from this ceremony, Plaintiff believes that his "prayers are hindered and ultimately not [accepted], i.e. void." Doc. 39-1, p. 15.  Unlike fasting, which occurs only during Ramadan, the Ghusal requirement seems to apply throughout the year.  That said, Plaintiff's motion is reasonably read as seeking a means "to proper[ly] clean the body [only] during the month of Ramad[a]n."  Doc. 140, p. 1.  Plaintiff also asks the Court to "order [the] Defendant[s] to provide adequate nutritious food" during Ramadan.  *Id.*

As the Defendants note, Plaintiff's motion is unaccompanied by supporting affidavits, and his most recent amended complaint is unverified.  Doc. 141, p. 3.  Plaintiff's motion thus lacks the evidentiary support typically required for preliminary injunctive relief.  *See, e.g.*, *Dunn v. Warden, Ware State Prison*, 644 F. App'x 898, 900 (11th Cir. 2016) ("Because the complaint was not verified, its allegations could not be considered evidence supporting injunctive relief").  The Court is mindful, however, that Plaintiff could have submitted affidavits along with his reply brief, if time had permitted a reply.  Moreover, Plaintiff did cite to relevant prison grievances attached as exhibits to a prior motion for preliminary injunctive relief.  Doc. 140-1, p. 11 (citing CM/ECF Docket Nos. 11-12, 11-13, 11-15, 11-16).  These exhibits are properly considered for purposes of Plaintiff's present motion.  *See Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) ("a district court may rely on … hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding") (internal quotations omitted).

Even when Plaintiff's allegations are treated as verified, Plaintiff has failed to satisfy the heavy burden of demonstrating that preliminary injunctive relief is appropriate. On that basis, therefore, and as discussed in greater detail below, Plaintiff's motion is denied.

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* (internal quotations omitted). In conducting this analysis, courts consider four factors: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Four Seasons Hotels and Resorts, B.V., v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003). The "movant must clearly carry the burden of persuasion" as to each of these four factors. *Id.*

## III. DISCUSSION

With regard to both (1) Ramadan fasting, and (2) "Ghusal" bodily cleansing, Plaintiff has failed to carry his burden of persuasion as to the factors relevant to the preliminary injunctive relief analysis. Accordingly, Plaintiff's motion for preliminary injunctive relief is denied.

### A. Ramadan Fasting

Plaintiff's Ramadan fasting arguments fail to satisfy the first two factors of the preliminary injunctive relief analysis: substantial likelihood of success, and irreparable injury. Accordingly, the Court need not address the third and fourth factors, balance of the equities and public interest, in order to resolve Plaintiff's request for an "order [requiring the] Defendant[s] to provide adequate nutritious food" during Ramadan. Doc. 140, p. 1.

Although Plaintiff asserts that he loses one-third of his daily caloric allotment by foregoing his "midday meal," a declaration from Ms. Samantha Minardo, a dietician who assists in "provid[ing] the menus for Georgia Department of Corrections facilities," indicates otherwise. Doc. 141-1, ¶ 2. According to Ms. Minardo, the "average [daily] caloric intake target for male inmates," including inmates like Plaintiff with religious dietary requirements, "is 2700 calories." *Id.*, ¶ 3. "[M]ale inmates who [observe] Ramadan receive approximately 295-419 [fewer calories] per day." *Id.*, ¶ 4. These calories are provided at two meals, "one given pre-dawn and the other after sunset." *Id.* Thus, according to Ms. Minardo's credible declaration, Muslim prisoners fasting during Ramadan receive approximately 2,281 to 2,405 calories per day, or around 84 to 89% of the standard 2,700 calorie diet.

To demonstrate a substantial likelihood of success on the merits of a religious exercise claim relating to Ramadan fasting, Plaintiff must show a "substantial burden" on his beliefs, meaning "pressure that tends to force adherents to forego religious precepts." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004). In light of Ms. Minardo's declaration, Plaintiff has not demonstrated that he is

pressured to forgo Ramadan fasting based on a deficiency of calories. *See, e.g.*, *Heard v. Finco*, 2014 WL 2920479 at *4 (W.D. Mich. June 27, 2014) ("there is no indication that a diet of 2,350 calories would force Plaintiffs to refrain from participating in, or abandon, the Ramadan fast"). The Court notes, too, that as of May 30, Plaintiff had reported no health complaints to medical or clerical staff at his prison, despite participating in the 2018 Ramadan fast. Doc. 141-2, ¶ 4; Doc. 141-3, ¶ 4. Because Plaintiff fails to show a substantial burden as to his ability to fast during Ramadan, Plaintiff likewise fails to show a substantial likelihood of success on the merits of his religious exercise claim.

For the same reason, Plaintiff also fails to demonstrate that he is substantially likely to succeed on an Eighth Amendment claim relating to caloric deficiencies during Ramadan fasting. The range of calories described by Ms. Minardo, 2,281 to 2,405 calories per day, is not so deficient as to deprive Plaintiff of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). *See also Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1998) ("Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation"). Nor does that range of reduced calories, which is provided only during the month of Ramadan, pose a threat of irreparable injury to Plaintiff's health.

Finally, Plaintiff's allegations that he previously "bit down on a rock" in his food, and thereby injured his tooth, are not sufficient to show that food contamination is so pervasive as to significantly detract from the caloric value of Plaintiff's evening meals, or to pose an independent threat of future harm. *See, e.g.*, *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that the food occasionally contains foreign

objects . . . while unpleasant, does not amount to a constitutional violation"). Put differently, Plaintiff's allegations of food contamination appear to be based on an isolated example of past injury. As a result, Plaintiff's allegations are not sufficient to show that future food contamination is likely, or that the harm arising from future food contamination is "actual and imminent." *Siegel v. LePore*, 234 F.3d 1163, 1176–77 (11th Cir. 2000). Accordingly, with regard to Ramadan fasting, Plaintiff is not entitled to preliminary injunctive relief.

**B.     Bodily Cleansing**

Plaintiff has provided little detail regarding the nature of his "Ghusal" bodily cleansing requirement, but the information that is available to the Court weighs against the award of a preliminary injunction entitling Plaintiff to "the simple opportunity to shower once a day" during Ramadan. Doc. 140-1, p. 12. The record indicates that Plaintiff currently "is only allowed to shower . . . once [each day] on Monday, [Wednesday] and Friday[.]" Doc. 39-1, p. 15.

With regard to the first factor of the preliminary injunctive relief analysis, substantial likelihood of success, it is not clear that Plaintiff has demonstrated a "substantial burden" on his religious beliefs. In this regard, Plaintiff has not explained whether he has access to water within his cell, and might thereby perform the bodily cleansing ceremony in his cell on days during which he lacks shower access. *See, e.g.*, *Lewis v. Ollison*, 571 F. Supp. 2d 1162, 1170–71 (C.D. Cal. July 14, 2008) (noting that a Muslim prisoner could "cleanse himself in his cell sink"). Plaintiff also has not explained whether he must clean his entire body, or whether instead a partial bodily cleansing may suffice. *See, e.g.*, *Hussain v. Univ. of Md. Med. Sys. Corp.*, 2010 WL 2651287 at

*1 (D. Md. June 30, 2010) (describing "Wudu," the "Islamic custom requiring the washing of hands and feet prior to prayer"). Finally, Plaintiff has not explained whether water is integral to the cleansing process. *See, e.g.*, *Thomas v. Lawler*, 2015 WL 5567921 at *5 (M.D. Penn. Sept. 22, 2015) ("tayammum, the act of dry ablution using sand or dust . . . may be substituted for wudu or ghusl when access to water is restricted").

While it was not necessary for Plaintiff to address these issues in order to survive screening under 28 U.S.C. § 1915A, Plaintiff will need to address these issues in order to succeed on the merits of his claim. If Plaintiff has other means of performing a cleansing ceremony rendering his prayers valid, then the lack of daily shower access does not substantially burden Plaintiff's exercise of religion. Accordingly, without more information from Plaintiff, the first "likelihood of success" factor weighs against the award of preliminary injunctive relief.

The second factor, threat of irreparable injury, also weighs against Plaintiff. Plaintiff argues that "without [a] preliminary injunction, [a] substantial burden will continue . . . [thereby] inevitably violating the First Amendment." Doc. 140-1, p. 9. The burden Plaintiff describes, though, is merely incidental to a prison shower policy. In the freedom of speech context, Eleventh Circuit authority indicates that "direct penalization, as opposed to incidental inhibition, of First Amendment rights constitutes irreparable injury" for purposes of preliminary injunctive relief. *K. H. Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006). The same rationale applies in the religious exercise context. Hence, even if Plaintiff had demonstrated a substantial burden, preliminary injunctive relief would not be appropriate.

Plaintiff's delay in seeking injunctive relief also weighs against a finding of irreparable injury. Although Plaintiff commenced this action in January 2017, (Doc. 1), Plaintiff did not file his initial motion for preliminary injunctive relief until June 2017. Doc. 11. This five-month delay "militates against a finding of irreparable harm." *Powers v. Sec'y, Fla. Dept. of Corr.*, 691 F. App'x 581 (11th Cir. 2017) (quoting *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016)) ("A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm").

With regard to the third factor, the balance of equities, the Court notes that Plaintiff's request for "the simple opportunity to shower once a day" is not as simple as Plaintiff suggests. The Georgia Diagnostic and Classification Prison, where Plaintiff is housed, is a highly secure environment. As the Defendants note, (Doc. 141, p. 6, n. 3), shower schedules are necessary because violence is common. *See, e.g.*, *Watson v. Bishop*, 2013 WL 1748617 at *3 (M.D. Ga. Mar. 28, 2013) (describing a violent inmate-on-inmate attack during a shower escort at the Georgia Diagnostic and Classification Prison). The need for safety when allowing prisoners access to showers is also highly relevant to the fourth "public interest" factor, given "[t]he public's interest in the administration of a safe prison system." *Watson v. Warden, Alabama*, 504 F. App'x 830, 831 (11th Cir. 2013). Simply put, an increase in the frequency of prisoner showers may also result in increased violence.

The third "balance of equities" factor is further complicated by Plaintiff's religious obligation to guard his modesty by "remain[ing] covered from the top of [his] naval to the bottom of his [knees]." Doc. 39-1, p. 13. Plaintiff is currently litigating a separate claim

in this action based on the Defendants' alleged practice of transporting prisoners to the shower "only in their underwear and shower shoes"—a practice undoubtedly based on security concerns related to contraband. Doc. 39-1, p. 14. Without commenting on the merits of this claim, the Court notes that the task of balancing the need for prison safety with a due respect for prisoners' religious beliefs is not simple, and it would be made still less simple were the Court to grant preliminary injunctive relief entitling Plaintiff to immediate access to daily showers. Hence, based on security concerns, both the third and fourth factors of the preliminary injunctive relief analysis weigh against the award of relief.

To summarize, with regard to his "Ghusal" bodily cleansing argument, Plaintiff has failed to satisfy his burden as to all four factors comprising the preliminary injunctive relief analysis. Accordingly, Plaintiff is not entitled to preliminary injunctive relief.

## IV. CONCLUSION

With regard to both (1) Ramadan fasting, and (2) "Ghusal" bodily cleansing, Plaintiff has not satisfied his burden of showing that the extraordinary remedy of preliminary injunctive relief is appropriate. Therefore, Plaintiff's motion for temporary restraining order or preliminary injunction (Doc. 140) is **DENIED**.

**SO ORDERED**, this 7th day of June, 2018.

S/ Marc T. Treadwell  
MARC T. TREADWELL, JUDGE  
UNITED STATES DISTRICT COURT