IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

HJALMAR RODRIGUEZ, Jr., )
)
)
Plaintiff, )
)
v. ) CIVIL ACTION NO. 5:17-cv-10 (MTT)
)
Commissioner HOMER BRYSON, *et al.*, )
)
)
Defendants. )
_____)

## ORDER

Plaintiff Hjalmar Rodriguez moves for the Court to appoint an expert medical witness to opine on his claim against Defendant Burnside for deliberate indifference to serious medical needs. Docs. 193; 200.[1] As a general rule, indigent parties in civil cases must bear the expenses of discovery. The *in forma pauperis* statute, 28 U.S.C. § 1915, generally authorizes only the commencement of a suit without prepayment of fees. Rule 706 of the Federal Rules of Evidence, however, gives courts "discretionary power to appoint an expert witness either on the court's own motion or the motion of a party." *Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996), *as amended* (Sept. 6, 1996). "When a plaintiff invokes exercise of that discretion and the case is one that by its nature warrants consideration of the possible need for an expert, the plaintiff is entitled to a reasoned ruling on whether an expert should be appointed." *Hobbs v.*

---

[1] Although the Plaintiff submitted a motion for reconsideration arguing for the appointment of a medical expert (Doc. 200), the Court has not yet ruled on his motion for appointment of a medical expert (Doc. 193). The Court, therefore, construes the motion for reconsideration as a second motion for appointment of a medical expert.

*United States*, 683 F. App'x 896, 898 (11th Cir. 2017) (quotation marks, alteration marks, and citation omitted) (quoting *Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996)). However, the Court does not bear any "affirmative obligation to appoint an independent expert." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1348 (11th Cir. 2003).

The Plaintiff alleges he injured his shoulder on January 9, 2016, submitted a medical report, and was examined by Defendant Burnside, a doctor, on several occasions for the shoulder injury. Doc. 182 at 12-13. The Plaintiff alleges his treatment was deficient for several reasons: Burnside examined him while his arms were handcuffed behind his back, preventing a proper shoulder examination; Burnside prescribed him Motrin despite ibuprofen upsetting Rodriguez's stomach; and two of the Plaintiff's requests for medical appointments were ignored. *Id.* at 13. In May 2016, the Plaintiff was able to see a different doctor, Fowlkes, who performed a physical examination, found the Plaintiff had an inflamed rotator cuff, and prescribed steroids, pain medication, and physical therapy. *Id.* at 13-14. The Plaintiff alleges he suffered pain while his injury was untreated. *Id.* at 13. The Plaintiff's injury resolved by July or August 2016. *Id.* at 14 (citing Doc. 175-3 at 90).

The Plaintiff argues that because the Defendant is a doctor, the only way to avoid "a wholly one-sided presentation of opinions" on the Plaintiff's claims is for the Court to appoint a medical expert. *See Steele*, 87 F.3d at 1271. But the Court finds that the appointment of a medical expert is not necessary or appropriate in this case.

First, the issues are not so complex as to require expert testimony. On the issue of pain medication, the Plaintiff alleges that he was in pain and that ibuprofen upset his

stomach, so it amounted to no treatment at all.  The Plaintiff can adequately testify to his level of pain and to whether Burnside's prescribed medication relieved that pain.  An expert would not be able to assist the Plaintiff or the jury on that claim.  On the issue of the shoulder examination, Burnside testified at a pretrial hearing that he examined the Plaintiff both while the Plaintiff's hands were cuffed behind his back and while they were cuffed in front of him.  Burnside admitted that this range-of-motion examination was not ideal, but testified that inmates must remain cuffed for security reasons.  Whether Burnside was deliberately indifferent will likely depend on his evidence of security concerns and prison medical procedures, rather than on medical evidence.  Finally, whether Burnside was deliberately indifferent in denying or delaying medical care will likely depend on Burnside's reasons for the delay and on what the Plaintiff told Burnside when requesting additional medical care.

Further, to the extent that the severity and urgency of the Plaintiff's shoulder injury will be at issue, the presentation of opinions on that issue will not be one-sided.  At the summary judgment stage, the Plaintiff's only medical evidence was the alleged statements and documents of Dr. Fowlkes.  *See* Doc. 182 at 20-21, 48-55.  As noted above, it was Fowlkes who diagnosed the Plaintiff's injury and prescribed treatment that was different from Burnside's treatment.  The Georgia Department of Corrections has agreed to bring Fowlkes to court to serve as a witness.  The Plaintiff, therefore, will have ample opportunity to elicit Fowlkes's testimony on his alleged conclusion that the Plaintiff had a torn rotator cuff, as well as on Fowlkes's opinions about proper examination of the shoulder and proper treatment for the shoulder.  Also, Fowlkes is, apart from Burnside, the only doctor with any firsthand knowledge of the Plaintiff's

medical condition. Further, the Plaintiff's shoulder injury has now resolved, and an expert medical witness would not be able to do anything other than hear about the injury from the Plaintiff, Burnside, Fowlkes, and the documents—and speculate. There will already be two doctors there with firsthand knowledge of the injury and medical records, and a third would be of limited usefulness to the jury.

In sum, most of the issues in the case do not require expert testimony, and to the extent medical evidence may be relevant, the Plaintiff already will have an allegedly favorable witness in Dr. Fowlkes. Moreover, it would not be fair to require Burnside to pay for an unnecessary medical witness hired only because the Plaintiff thought he might provide more favorable testimony. *See generally Gillentine v. Corr. Med. Servs., Inc.*, 2014 WL 5795553, at *4 (N.D. Ala. Nov. 6, 2014) (discussing the financial issues raised by motions for court-appointed expert witnesses when the plaintiff is indigent). The Plaintiff's motions to appoint a medical expert (Docs. 193; 200) are **DENIED**.

**SO ORDERED**, this 27th day of January, 2020.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT