IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| HJALMAR RODRIGUEZ, Jr., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:17-cv-10 (MTT) |
| | ) |
| Commissioner HOMER BRYSON, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### ORDER

Plaintiff Hjalmar Rodriguez, Jr. seeks to appeal in forma pauperis from the judgment entered on February 25, 2020. For the following reasons, that motion (Doc. 233) is **DENIED**.

**A. Standard of Review**

Applications to appeal in forma pauperis are governed by 28 U.S.C. § 1915 and Fed. R. App. P. 24. 28 U.S.C. § 1915 provides:

> (a)(1) [A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.
> . . .
> (3) An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

Similarly, Fed. R. App. P. 24(a) provides:

> (1) [A] party to a district-court action who desires to appeal in forma pauperis must file a motion in the district court. The party must attach an

1

    affidavit that:

        (A) shows . . . the party's inability to pay or to give security for fees and costs;
        (B) claims an entitlement to redress; and
        (C) states the issues that the party intends to present on appeal.

    (2) If the district court denies the motion, it must state its reasons in writing.

Thus the Court must make two determinations when faced with an application to proceed in forma pauperis. First, it must determine whether the plaintiff is financially able to pay the filing fee required for an appeal. Mr. Rodriguez did not submit a certified copy of his trust fund account statement. Rather, he claims that the prison officials are withholding his statement and moves for the Court to order that they make the statement available. Doc. 238. But the Court need not determine Rodriguez's ability to pay, because the appeal is not taken in good faith.

"'[G]ood faith' . . . must be judged by an objective standard." *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The plaintiff demonstrates good faith when he seeks review of a non-frivolous issue. *Id.* An issue "is frivolous if it is 'without arguable merit either in law or fact.'" *Napier v. Preslicka*, 314 F.3d 528, 531 (11th Cir. 2002) (citations omitted). "Arguable means capable of being convincingly argued." *Sun v. Forrester*, 939 F.2d 924, 925 (11th Cir. 1991) (quotation marks and citations omitted); *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) ("[A] case is frivolous . . . when it appears the plaintiff 'has little or no chance of success.'") (citations omitted). "In deciding whether an [in forma pauperis] appeal is frivolous, a district court determines whether there is 'a factual and legal basis . . . for the asserted wrong, however inartfully pleaded.'" *Sun*, 939 F.2d at 925 (citations omitted).

**B. Discussion**

Rodriguez's motion to proceed IFP lists the arguments he intends to pursue on appeal. The Court addresses each argument in turn, beginning with pretrial issues and then discussing issues relating to the trial of the two claims (both of which arose from the same alleged injury) that went to trial. First, a word about Rodriguez. He is likely this District's ablest and most prolific pro se litigator. His considerable abilities are demonstrated by, among other things, his lack of a single "strike" under the Prison Litigation Reform Act. His prolificity is demonstrated not so much by the number of lawsuits he has filed, as by his abundant and creative filings in his lawsuits—currently this case has 239 docket entries. The Court's praise of Rodriguez's abilities is sincere. He has managed to get claims to a jury that few, perhaps no, lawyers could, and his courtroom skills and presence are impressive. Jurors too praise his prowess, even as they find no merit to his claims.

Further evidence of his ability as a litigator can perhaps be found in a recent order granting leave to appeal IFP and appointing counsel because of the "complexity of his procedural history and myriad claims that he seeks to raise on appeal." *Rodriguez v. Macon State Prison*, No. 19-12632-C (11th Cir. Apr. 7, 2020). Unlike the petition to appeal IFP in that case, the IFP petition here specifies the issues he wants to appeal, providing this Court the opportunity to help sort out a procedural history just as complex and claims just as myriad.

**1. Pretrial Issues**

Rodriguez's complaint and amended complaint also asserted myriad claims, and

the procedural history is, if anything, more complex.[1]  The Court adopted the Magistrate Judge's recommendation, on screening, to dismiss many of those claims under 28 U.S.C. §§ 1915A, 1915(e).  *See generally* Docs. 14; 84.  The claims which proceeded were: religious freedom claims, against nine defendants, regarding Rodriguez's inability to conform to his Halal religious dietary requirements and inability to conform to bodily modesty requirements; conditions of confinement claims, against six defendants, regarding rocks in his food and inadequate nutrition; deliberate indifference to serious medical needs claims, against eleven defendants, regarding a cracked tooth and an injured shoulder; and retaliation claims, against one defendant, under the First Amendment.  *See generally* Doc. 14.  However, while the Report and Recommendation was pending, Rodriguez filed an amended complaint.  After screening that amended complaint, the Court allowed additional claims to go forward: religious freedom claims against five more defendants, conditions of confinement claims against five more defendants, deliberate indifference to medical needs claims against four more defendants, and equal protection claims against eleven defendants.  Doc. 84 at 12-13.

Although those claims survived screening, almost all were easily dismissed at the summary judgment stage.  The Magistrate Judge's 59-page Report and Recommendation, which was painstakingly thorough, found every claim without merit except two: the claim for deliberate indifference to serious medical needs against Defendant Dr. Burnside for failure to treat Rodriguez's shoulder injury, and a retaliation

---

[1] This Court's lenient screening has no doubt been a factor in Rodriguez's complex pleading and myriad claims and, significantly, his ability to avoid strikes under the Prison Litigation Reform Act.  Strict application of the PLRA and Rules 20 and 21 of the Federal Rules of Civil Procedure would have prevented Rodriguez from joining numerous unrelated claims and defendants in one action.  The District's screening practices have been revised.

claim against Burnside for failure to treat Rodriguez's shoulder injury.[2]  Doc. 182.

In the end, Rodriguez's only claims, both based on the shoulder, rested on his assertion, in his deposition, that Dr. Joseph Fowlkes had diagnosed him with a torn rotator cuff.  Rodriguez testified that "Dr. Fowler [sic] took me out of handcuffs and physically examined me, unlike Dr. Burnside, and determined that I had received a small tear in my rotator cuff."  Doc. 87 at 4-7; *see* Doc. 182 at 48-49.  However, Rodriguez's deposition testimony as to what Fowlkes had told him turned out to be untrue.  Fowlkes contradicted it at trial, and Rodriguez did not press the point.  Specifically, Fowlkes testified on direct examination by Rodriguez that Rodriguez simply had shoulder inflammation, likely the result of exercise, that was properly and successfully treated with anti-inflammatory medications.  Fowlkes Transcript at 7:5-8:15.  Had the substance of Fowlkes's trial testimony been offered in support of Burnside's motion for summary judgment, it is likely that all of Rodriguez's claims would have been dismissed.[3]  Similarly, after Fowlkes testified and Rodriguez failed to produce evidence of a serious shoulder injury, the two remaining claims likely would have been resolved by a motion for judgment as a matter of law.

In his statement of issues he seeks to appeal, Rodriguez first argues the Court abused its discretion by adopting (Doc. 84) the recommendation on screening (Doc. 14) to dismiss without prejudice the claims against the Doe Defendants kitchen staff in its order of January 25, 2018.  Doc. 33 at 2-3.  He argues that before dismissing, the Court

---

[2] The Magistrate Judge also noted the Defendants had not moved for summary judgment on two equal protection claims.  This Court allowed supplemental briefing and granted summary judgment on those claims.

[3] The Court is not critical of Burnside's lawyers.  They too were dealing with myriad claims.  Also, even in the absence of medical evidence from Burnside, this Court likely was again too lenient in accepting, even in the absence of an objection, Rodriguez's lay and hearsay testimony that he had a torn rotator cuff.

should have (i) ordered limited discovery for the sole purpose of determining the identities of those putative defendants and (ii) issued subpoenas to determine the names of those defendants.  *Id.*  However, the Court simply applied the well-established rule that fictitious party pleading is not generally permitted in federal court.  And although Rodriguez's request for discovery was premature, the Court noted that "Rodriguez will have the opportunity to conduct discovery, and if he is able to identify the relevant kitchen staff members through that process then he may move to amend his claims."  Doc. 84 at 6.  Rodriguez did not move to amend his complaint to add those claims.[4]

Second, Rodriguez seeks to appeal the Magistrate Judge's denial of his motion to compel and to appoint counsel.  Doc. 233 at 5-6; *see* Doc. 170.  The Magistrate Judge denied that motion because it was vague and overbroad.  Doc. 170 at 4 ("Plaintiff fails in his motion to cite particular discovery requests to which he contends the Defendants inadequately responded.").  The Court can identify no good-faith argument against that conclusion.  Rodriguez also argues the Court made two procedural errors regarding his motion.  First, the Magistrate Judge ruled before receiving Rodriguez's reply brief.  Doc. 233 at 6.  However, the motion was ripe.  Under the prison mailbox rule, Rodriguez's reply was filed no earlier than October 20, 2018.  Doc. 171.  The response brief was mailed on October 2, 2018.  Reply briefs are due within 14 days of service of the response brief.  L.R. 7.3.  There was no error in the Magistrate Judge's

---

[4] Rodriguez did seek discovery of the names, titles, and duties of every individual who had worked in food service at his facility over the preceding two years.  *See* Doc. 165-3 at 3.  The Defendants failed to respond to that request.  *Compare* Doc. 165-3 ¶ 7 ("State all the names, titles, and duties of all food service staff members") *with* Doc. 169-3 ¶ 7 ("Food service officials prepare but do not serve food.").  The Magistrate Judge denied Rodriguez's motion to compel.  Doc. 170.  Because Rodriguez also seeks to appeal that denial, it is discussed below.

ruling when he did.  Further, the reply brief did not cite to particular discovery requests to which the Defendants inadequately responded, so it would not have affected the Magistrate Judge's reasoning.  *See generally* Doc. 171.  The second procedural error Rodriguez alleges is that he objected to the Magistrate Judge's Order, but the Court did not rule on the objection.  Doc. 233 at 6.  It is true that the Court did not rule on the objection.  However, the lack of a ruling did not prejudice Rodriguez, because the objection raised no grounds for questioning the Magistrate Judge's order, and the Court certainly would have affirmed that order.

Third, Rodriguez seeks to appeal the Magistrate Judge's denial of his motion for sanctions based on the Defendants' untimeliness in producing discovery and failure to adequately respond to requests for discovery.  Doc. 233 at 6.  As to untimeliness, the Magistrate Judge concluded that "the large number of Plaintiff's discovery requests in this action constitutes 'good cause' for a second extension of discovery [and] for excusing the Defendants' untimeliness."  Doc. 170 at 3.  As to adequacy of responses, the Magistrate Judge denied the motion because Rodriguez "fail[ed] in his motion to cite particular discovery requests to which he contends the Defendants inadequately responded."  *Id.* at 4.  Rodriguez raises no good-faith arguments that those conclusions were improper.

Fourth, Rodriguez seeks to appeal the Court's denial of his motion for a preliminary injunction on January 25, 2018.  Docs. 233 at 2; 84 at 11.  That injunction was based on a religious freedom claim regarding dietary practices, and the Court later dismissed that claim.  Rodriguez does not identify any non-frivolous ground for appealing the denial of his motion for a preliminary injunction, and after review, the

7

Court cannot identify a non-frivolous argument for appeal.[5]

Fifth, Rodriguez seeks to appeal the Court's dismissal of his Eighth Amendment claim against Bearing, a dentist, based on denial of dental care. The Court dismissed that claim because "nothing in Rodriguez's allegations suggests that Bearing had any control over the actions of the prison officials that Rodriguez alleged ignored his complaints." Doc. 84 at 5. Rodriguez disagrees, arguing that he orally informed Bearing that the prison officials were ignoring his requests for treatment. Doc. 233 at 4. After Bearing fixed his tooth, Rodriguez warned him that, if the tooth pain were to recur, the nurses and guards would try to block his access to Bearing. Doc. 85 ¶¶ 76-77. Rodriguez does not say what he thinks Bearing should have done to prevent that eventuality. And those allegations, by themselves, do not indicate that Bearing had any responsibility to prevent the prison officials from allegedly interfering with Rodriguez's access to him. That claim for appeal lacks arguable merit.

Sixth, Rodriguez objects to the Court's dismissal of his conspiracy claim against Chatman, Powell, Bishop, and Butts. Doc. 233 at 5. But he makes no argument against the Court's conclusion that his complaint "provide[d] no 'supporting operative facts' and state[d] only a 'naked assertion of a conspiracy.'" Doc. 84 at 10 (quoting *Phillips. v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984)). The Court cannot identify any non-frivolous argument on appeal regarding the dismissal of the conspiracy claim. The same is true of the Court's denial of Rodriguez's later motion to amend his complaint to add conspiracy claims. *See* Docs. 233 at 5; 129 at 1-7.

Seventh, Rodriguez seeks to appeal the Court's Order denying his second

---

[5] Rodriguez's proposed appeal of that interlocutory order may also be time-barred.

motion for a preliminary injunction. Doc. 233 at 5. Rodriguez argues the Court should have held an evidentiary hearing. *Id.* But the Court expressly found that "[e]ven when Plaintiff's allegations are treated as verified, Plaintiff has failed to satisfy the heavy burden of demonstrating that preliminary injunctive relief is appropriate." Doc. 145 at 4. Rodriguez does not advance any new arguments for why the Court should have granted the motion, and again, the Court cannot identify any non-frivolous grounds for appealing that Order.

Eighth, Rodriguez seeks to appeal the Court's denial of his motion to appoint counsel. Doc. 233 at 6-7. His only argument for appointment of counsel is that he was unable to effectively conduct discovery. *Id.* That does not alter the Court's conclusion that appointment of counsel was not warranted. Rodriguez also claims discovery was too complicated for him to manage without counsel. Factual complexity can be a factor in the appointment of counsel. *See Holt v. Ford*, 862 F.2d 850, 853 (11th Cir. 1989) ("In determining whether to appoint counsel, the district court typically considers, among other factors, the merits of the plaintiff's claim and whether the claim is factually or legally so complex as to warrant the assistance of counsel."). But the facts alleged are straightforward and manageable without a lawyer; the only complexity in this case comes from Rodriguez's voluminous allegations, many unrelated to one another and many frivolous, against every conceivable defendant. That, by itself, is not enough to warrant appointment of counsel. The Court cannot identify a non-frivolous ground for appealing that order.

Ninth, Rodriguez seeks to appeal the Court's dismissal of his claims under the Religious Land Use and Institutionalized Persons Act as moot based on his transfer to

Valdosta State Prison.  Rodriguez now alleges that the RLUIPA violations continued at Valdosta and that they were pursuant to a policy of Defendant Commissioner Bryson.  Doc. 233 at 8-9.  But he never alleged either of those two things before, and the Magistrate Judge fully addressed Rodriguez's arguments against a finding of mootness.  *See* Doc. 182 at 19-20 ("the record does not contain any evidence or allegations that relate to potential constitutional or RLUIPA violations concerning the use of non-conforming utensils at Valdosta State Prison.  Nor is there any suggestion that any of the defendants named in this action are responsible for any violation of Plaintiff's rights that may have occurred at Valdosta State Prison. . . .")  The claims, therefore, were properly dismissed, and the new allegations do not provide a good-faith basis for Rodriguez's appeal.  *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 705–06 (11th Cir. 2016) (noting that an appellant may not "add new allegations and argue that those new assertions support his cause of action.") (citing *Sterling Fin. Inv. Grp., Inc. v. Hammer*, 393 F.3d 1223, 1226 (11th Cir.2004)).  Doc. 233 at 7-8.

Tenth, Rodriguez seeks to appeal the Court's dismissal of his First Amendment claims, arguing that the Court should have applied the more plaintiff-friendly standard established by RLUIPA.  But the First Amendment standard is not the same as the RLUIPA standard.  Doc. 233 at 10-11.  *See Holt v. Hobbs*, 574 U.S. 352, 356-59 (2015) (discussing relationship between First Amendment and RLUIPA).  His argument that the Court should have applied the RLUIPA standard to his First Amendment claims lacks arguable merit.

Eleventh, Rodriguez seeks to appeal the Court's dismissal of his equal protection claim regarding Muslim prisoners' not receiving adequate nutrition during Ramadan.

Doc. 233 at 11.  The Court adopted the Magistrate Judge's conclusion that Rodriguez, a Muslim inmate who adhered to strict dietary requirements, including fasting during Ramadan, was not similarly situated to inmates in the general population regarding diet and caloric intake during the time of Ramadan.  *See* Docs. 187; 182 at 37-38.  Rodriguez identifies no non-frivolous basis for questioning that conclusion.

Twelfth, Rodriguez seeks to appeal the Court's dismissal of his deliberate indifference to serious medical needs claim based on inadequate treatment for his dental injuries.  Doc. 233 at 12-13.  His claim rests on two arguments.  First, he argues the Court's dismissal of his claim contradicted its finding that a reasonable jury could find he had a serious medical need.  *Id.* at 12 (citing Doc. 182 at 45).  But a serious medical need is only one of three elements of Rodriguez's claim: the other elements are "(2) the official was deliberately indifferent to that need; and (3) the official's deliberate indifference and the plaintiff's injury were causally related."  Doc. 182 at 43 (citing *Hinson v. Bias*, No. 16-14112, 2019 WL 2482092, at *13 (11th Cir. June 14, 2019)).  Rodriguez failed to produce enough evidence for a jury to find for him on (2) or (3), so the Court granted judgment to the Defendants.  Second, Rodriguez argues the Court should have found that the Defendants' delay in treating him constituted deliberate indifference.  But the Court remains persuaded by the Magistrate Judge's analysis, and based on the evidence in the record, there is no good-faith basis for the argument that a reasonable jury could have found deliberate indifference based on the delay in dental care.

Thirteenth, Rodriguez seeks to appeal the Court's adoption of the Recommendation to limit Rodriguez's First Amendment claims to nominal damages,

11

arguing that other circuits have held that the Prison Litigation Reform Act's limitation of remedies in the absence of physical injury does not apply to punitive damages. Doc. 233 at 13-14. That claim for appeal lacks arguable merit for two reasons: first, Eleventh Circuit law is clear that the PLRA's physical-injury requirement applies to punitive damages. *See Al-Amin v. Smith*, 637 F.3d 1192, 1195-99 (11th Cir. 2011). Second, the Court granted summary judgment for the Defendants on the First Amendment claims. Because Rodriguez lacks a good-faith basis for challenging that judgment, the question of what remedies were available is not at issue.

### 2. Trial Issues

From experience, the Court has found it necessary to conduct pretrial conferences a bit differently in cases brought by pro se prisoners. Generally, that is because of the prisoner's lack of experience and inability to marshal documents and witnesses for trial. Apart from considerations of fairness, providing assistance to pro se prisoners facilitates an orderly trial. While Rodriguez does not lack experience, he does face the difficulties all prisoners face in securing what is necessary for trial. The Court notes, gratefully, that lawyers from the Attorney General's office have always cooperated with the Court in its efforts to ensure a pro se plaintiff has what he or she needs to present an orderly case. For example, here defense counsel provided considerable assistance to the Court in its efforts to locate non-party witnesses, to arrange for their appearance at trial, and to gather documents Rodriguez claimed he did not have. The Attorney General's office was especially helpful with witnesses. Rodriguez did not have the information necessary to subpoena the witnesses he claimed he needed for trial, because he did not ask for it in discovery. Given

Rodriguez's experience, it is arguable he did not warrant the special assistance the Court affords less experienced pro se litigants, and given his history, it perhaps would be understandable if the Attorney General's office was less amenable to the Court's requests for assistance on Rodriguez's behalf.  Nonetheless, the Court questioned Rodriguez in detail about the identities of those witnesses and what role he hoped they would play in his case.  In the end, the Court noted that the only witnesses whose absence might prejudice Rodriguez were Fowlkes, who allegedly diagnosed a torn rotator cuff, and an alleged officer in the Special Management Unit (SMU) named "Jerrame Gauld," from whom Rodriguez claimed to have a helpful declaration.  The Attorney General's office was cooperative in making Fowlkes available and in trying to locate "Gauld."  In sum, the Court, with the assistance of the Attorney General's office, gathered and copied documents for Rodriguez to use at trial and made arrangements for necessary witnesses to be present for trial.  With that background, the Court turns to the trial issues Rodriguez wishes to appeal.

In his fourteenth issue for appeal, Rodriguez argues the Court abused its discretion in denying his motion for appointment of counsel for trial and appointment of a medical expert.  Doc. 233 at 14-15.  Before ruling on that motion, the Court made arrangements for Burnside to testify at the pretrial conference to be sure the Court understood the nature of the medical issues.  After hearing from Rodriguez and Burnside and having the benefit of a complete medical record, it was apparent (though not as apparent as it would be after Fowlkes's trial testimony) that Rodriguez's alleged injury was not as serious as he claimed and that the medical issues were not complex.  As the Court noted in its Order denying the motion, the Attorney General's office had

13

agreed by then to make Fowlkes available to Rodriguez at trial. Given the issues Rodriguez intended to raise at trial and the fact that all knowledgeable medical providers would testify at trial, the Court found no good reason to appoint an expert.[6] Doc. 213. Given Fowlkes's trial testimony, it is even more apparent that no grounds existed for providing Rodriguez a medical expert. His argument that the Court's Order denying appointment of a medical expert was an abuse of discretion, lacks arguable merit. Similarly, though Rodriguez does not identify the grounds for challenging the Court's Order denying appointment of counsel, the Court cannot identify any good-faith basis for appealing the denial of counsel.

Fifteenth, Rodriguez contends it was an abuse of discretion for the Court not to make witnesses available to Rodriguez.[7] Doc. 233 at 15. Rodriguez claims he had "no way of locating or contacting said witnesses." *Id.* As noted, this issue was addressed thoroughly at the pretrial conference, when Rodriguez generally stated that he was unable to subpoena witnesses because he did not know their location. Burnside argued that Rodriguez should have sought that information in discovery, and the Court generally agreed. Rodriguez admitted he failed to seek that information in discovery but argued that if he had requested that information, the request would have been denied. Of course, if Rodriguez had requested the names and locations and been denied them,

---

[6] In addition, because the now-retired Burnside is the only defendant, the Court noted the practical problems raised by the appointment of experts for the benefit of indigent defendants—who pays? *See generally Gillentine v. Corr. Med. Servs., Inc.*, 2014 WL 5795553, at *4 (N.D. Ala. Nov. 6, 2014) (discussing the financial issues raised by motions for court-appointed expert witnesses when the plaintiff is indigent).

[7] This argument also relates to the denial of Rodriguez's motion for trial counsel because he believes trial counsel would have been able to procure the contact information for GDC staff. Because discovery had already closed, as discussed below, that belief is not well founded.

14

the Court could have ruled on the issue in a motion to compel.[8] But Burnside's objection to reopening discovery was well founded, and there is no good-faith basis for Rodriguez's argument that the Court should have compelled Burnside to find and provide that information on the eve of trial.

      Still, the Court questioned him about those witnesses in an effort to understand who they were and which, if any, were necessary for Rodriguez to present his case. Apart from Fowlkes and "Jerrame Gauld" or "Gaulding," the witnesses were: (1) Christopher Stodghill; (2) an unknown physical therapist; (3) Captain Williams, an SMU officer; (4) Carla Mitchell, Rodriguez's wife; (5) June Bishop; and (6) a Deputy United States Marshal who had served Burnside in one of Rodriguez's prior lawsuits. Gauld, Stodghill, and Mitchell would allegedly have testified that they observed Rodriguez in pain. But of course, Rodriguez himself was able to testify to that. "Gauld" would also allegedly testify that he had personally observed Rodriguez's pain while being handcuffed and limitations in his range of motion. After reviewing the declaration allegedly signed by "Gauld" (*Rodriguez*, 5:17-cv-387, Doc. 133-6), the Court concluded he was a potentially necessary witness and asked defense counsel to locate Gauld. Despite diligent efforts, no "Gauld" or anyone with a similar name could be found. *See* Doc. 217. Williams and Bishop had allegedly notified the prison's medical staff of Rodriguez's shoulder injury, but there was no dispute that Rodriguez had continued

---

[8] It is true that counsel for the Defendants would probably have been reluctant to provide the names and home addresses of prison staff to an inmate, and understandably so. Still, had Rodriguez actually raised the issue during discovery, it certainly would have been possible to find a way to provide Rodriguez the information he needed without unduly compromising the privacy of GDC employees.

requesting treatment and that prison medical staff was aware of those requests.[9]  Those witnesses would not have added anything to the case, so the Court did not ask the Attorney General's Office to remedy Rodriguez's mistakes by making them available.  Rodriguez hoped the Deputy Marshal would testify to Burnside's awareness of the prior lawsuit for the retaliation claim and also provide impeachment evidence.  However, the Deputy's testimony was unnecessary to show Burnside's awareness and inadmissible for impeachment, as discussed in more detail below.  In sum, despite Rodriguez's failure to identify and determine the addresses of potential witnesses, the Court still worked with defense counsel to try to provide Rodriguez with the witnesses he needed to present an orderly case.

Sixteenth, Rodriguez argues he received subpoenas "at the eleventh hour before [the] trial date."  Doc. 233 at 16.  That is true: the Court was late in sending Rodriguez subpoenas.  However, Rodriguez admitted at the pretrial conference that he did not know the location of any of the witnesses he intended to subpoena.  The Court's delay in providing him with subpoenas, therefore, had no effect on his ability to call witnesses at trial.  Again, the Court went out of its way to ensure that Burnside made Fowlkes and "Gauld" available.  Doc. 37-4.  Rodriguez does not have any good-faith basis for arguing he was prejudiced by the late issuance of subpoenas.

Seventeenth, Rodriguez contends the Court abused its discretion in refusing to make available a Deputy United States Marshal as a witness for Rodriguez.  Doc. 233 at 16.  In proceedings before the Magistrate Judge in March 2016 concerning

---

[9] The Court also notified Rodriguez that it would allow him to use at trial interrogatory responses, from Bishop, stating that she had spoken to the SMU medical staff about Rodriguez's shoulder injury.  Docs. 212 at 1; 212-4 at 5.

Burnside's alleged default in a previous lawsuit, Burnside had testified that he was not served with a summons.  The Deputy testified he had served Burnside in October 2015, and the Magistrate Judge found the Deputy's testimony was credible.  *Rodriguez v. Chatman et al.*, 5:17-cv-387, Doc. 118 at 4-5.  Rodriguez wanted the Court to locate the Deputy (who no longer works in this District) and make him available as a witness for Rodriguez.

The Deputy's testimony could conceivably be relevant for two purposes; the Court analyzes them separately.  First, the testimony could be relevant to prove Burnside's awareness of Rodriguez's prior lawsuit against him for purposes of Rodriguez's retaliation claim.  However, the Deputy's testimony was not needed for that purpose because the parties stipulated that during the time that Burnside was treating Rodriguez's shoulder, Burnside was aware of Rodriguez's pending lawsuit against him.  The Court read that stipulation to the jury.[10]  Second, Rodriguez could use that alleged false testimony as evidence of Burnside's character for truthfulness.  Although a witness does put his credibility for truthfulness in issue by testifying, extrinsic evidence of prior specific acts is not admissible to prove a witness's lack of truthfulness.  Fed. R. Evid. 608(b).  Rodriguez has no good-faith argument that the proposed testimony of the

---

[10] Rodriguez also argues that Burnside gave testimony inconsistent with that stipulation and thereby opened the door for Rodriguez's proposed evidence from the Deputy.  But the Court promptly reminded the jury of that stipulation and clearly told the jury that Burnside had been aware of the prior lawsuit at the time he treated Rodriguez's shoulder.

   As a practical matter, reminding the jury of the stipulation also avoided potential prejudice to Rodriguez.  When he questioned Burnside about the prior lawsuit, Burnside responded that "Every time you came in, you would brag about filing lawsuits."  He had given similar testimony on direct examination.  In the Court's experience, jurors tend to be less sympathetic to plaintiffs they perceive as highly litigious, and Burnside's testimony and his counsel's argument made efforts to depict Rodriguez as litigious.  The fact that the parties had already agreed to resolve that issue by stipulation was arguably favorable to Rodriguez because it limited Burnside's opportunities to depict him as litigious.  And Rodriguez may not have realized the risk he was running by needlessly opening the door to Burnside's comments about how many lawsuits Rodriguez filed and threatened to file.

17

Deputy was even admissible, much less that the Court should have made the Deputy available as a witness for Rodriguez when Rodriguez had failed to take the necessary steps to do so himself. On a practical note, all of this was about proving that Burnside's retaliation was motivated by Rodriguez's previous claims against him. Even assuming Burnside was not truthful about a particular claim and putting aside his stipulation that he was aware of that claim, if anything is clear it is that Burnside knew about Rodriguez's claims and threats of claims.

Eighteenth, Rodriguez argues the Court improperly made excuses for Mary Gore's mistaken testimony that she had not previously been a party to the lawsuit. Doc. 233 at 16-17. The relevant exchange occurred while Rodriguez was questioning Gore about the fact she had previously been a party to the lawsuit. Gore, who had been dismissed early in the case, replied that she could not remember being "in court" with Rodriguez until that day. Rodriguez, taking that as a denial that she had been a party, then wanted to use her discovery responses merely to show that she had been a party. The Court informed Gore, and the jury, that she had been a party and that, through her lawyers, she had answered interrogatories. Rodriguez did not object, and the point he wished to make—that Gore had been a party— was made. That ground is frivolous.[11]

Finally, Rodriguez asserts, in conclusory fashion, that the jury instructions misstated the law concerning retaliation and deliberate indifference to serious medical needs. Doc. 233 at 17. The instructions, which were adapted from the Eleventh Circuit Pattern Jury Instructions with few changes, fully covered the necessary matters in this

---

[11] Further, had Rodriguez pursued the inquiry, he would have risked prejudice because he would have allowed Gore the opportunity to explain why she could not remember a particular suit. Rodriguez has sued Gore twice, she has been a defendant in this Court in at least 20 cases, and Burnside, her colleague in the medical unit, has been sued at least 39 times.

18

case. Rodriguez has identified no deficiency in the instructions, and the Court can find none. That ground is frivolous.

For the reasons noted above, there are no good-faith arguments Rodriguez can make on appeal. Consequently, his motion to appeal in forma pauperis (Doc. 233) is **DENIED**, and his motion for a court order requiring prison officials to make available his prison account statement (Doc. 238) is **DENIED** as moot.

If Rodriguez wishes to proceed with his appeal, he must pay the entire $505 appellate filing fee. Because Rodriguez has stated that he cannot pay the fee immediately, he must pay using the partial payment plan described under 28 U.S.C. § 1915(b). Pursuant to section1915(b), the prison account custodian where Rodriguez is confined shall cause to be remitted to the Clerk of this Court monthly payments of 20% of the preceding month's income credited to Rodriguez's account (to the extent the account balance exceeds $10) until the $505 appellate filing fee has been paid in full. Checks should be made payable to "Clerk, U.S. District Court." The Clerk of Court is **DIRECTED** to send a copy of this Order to the custodian of the prison in which Rodriguez is incarcerated.

**SO ORDERED**, this 13th day of May, 2020.

S/ Marc T. Treadwell  
MARC T. TREADWELL, JUDGE  
UNITED STATES DISTRICT COURT